IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MATTHEW J. BYERLY )<br>    Plaintiff, )<br>v. )<br>     )<br>VIRGINIA POLYTECHNIC )<br>INSTITUTE AND STATE )<br>UNIVERSITY )<br>    Defendant. ) | Civil Action No. 7:18-cv-16 |

## MEMORANDUM OPINION

In this civil rights action under 42 U.S.C. § 1983, defendant Virginia Polytechnic Institute and State University ("Virginia Tech") moves to dismiss the plaintiff Matthew J. Byerly's ("Byerly") amended complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[1] Dkt. No. 20. Byerly opposes the motion to dismiss and also asks for leave to amend. I grant Virginia Tech's motion to dismiss both for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, dismiss the amended complaint without prejudice, and allow Byerly leave to file a second amended complaint.

## I. BACKGROUND

In the fall of 2016, Byerly was a student at Virginia Tech and enrolled in an epidemiology course taught by Dr. Pamela Ray, a part-time instructor. Am. Compl. at ¶¶ 10, 11, Dkt. No. 19. During the final examination in the course in December 2016, Dr. Ray approached Byerly, collected his answer sheet and stated, "A student behind you said it appeared you were sharing answers, so I will have to take these. You will be contacted by honor court in the next few days." Id. at ¶¶ 14, 15.

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

1

Byerly appeared before an honor panel in February 2017. Id. at ¶ 23. At the hearing, Byerly denied sharing answers during the exam or cheating in any way. Id. at ¶ 25. Dr. Ray also spoke before the honor panel, explaining that she collected Byerly's exam upon receiving a complaint of cheating from another student. Id. at ¶ 27. The student who had notified Dr. Ray of Byerly's alleged cheating did not appear before the honor panel and was not identified. Id. at ¶ 28. The panel found against Byerly, and his appeal to the Dean of Student Affairs was denied. Id. at ¶¶ 29-30. Byerly received an "F*" in the course, which he asserts will be "devastating for his plans to enter the field of medicine." Id. at ¶¶ 32, 34. At the time of the filing of the Amended Complaint in April 2018, Byerly was a college senior at Virginia Tech and indicated he hoped to attend medical school. Id. at ¶¶ 8, 9.

Byerly's Amended Complaint alleges a single cause of action against Virginia Tech for violation of the due process clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.[2] Byerly asserts that he has a constitutionally protected property interest in his continued education at Virginia Tech and the credits he purchased for his epidemiology course, that the due process provisions of the Fourteenth Amendment apply to Virginia Tech's disciplinary process, and that Virginia Tech "failed to provide adequate due process when it neglected to identify [his] accuser or provide him with an opportunity to confront and question his accuser." Id. at ¶¶ 38-42. Byerly asks for declaratory and injunctive relief, as well as attorney's fees and costs. Id. at p. 7.

---

[2] Byerly originally filed this action as "John Doe" and Virginia Tech moved to dismiss the original complaint pursuant to Fed. R. Civ. P. 10(a) for Byerly's failure to name all parties. Dkt. No. 3. Byerly opposed the motion and moved for leave of court to proceed under a pseudonym (Dkt. No. 4), which I denied and directed that unless Byerly filed an amended complaint disclosing his actual name, I would grant Virginia Tech's motion to dismiss under Rule 10(a). Dkt. No. 17. Byerly filed an amended complaint disclosing his identity, and I dismissed Virginia Tech's motion under Rule 10(a) as moot. Dkt. Nos. 19, 33.

Virginia Tech moves to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, and pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Dkt. No. 20. Byerly opposes the motion to dismiss, and asks for leave to amend to name an officer of Virginia Tech as the defendant. Mem. in Opp. to D's Mot. to Dismiss at 13, Dkt. No. 29.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Subject matter jurisdiction is a threshold issue and absent a proper basis for subject matter jurisdiction, a case must be dismissed. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998); Haley v. Virginia Dep't of Health, No. 4:12-CV-00016, 2012 WL 5494306, at *2 (W.D. Va. Nov. 13, 2012) ("Federal district courts are courts of limited jurisdiction."). The plaintiff, who asserts jurisdiction, bears the burden of proving subject matter jurisdiction in response to a Rule 12(b)(1) motion. See Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). In deciding whether jurisdiction exists the court may "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, Fredericksburg & Potomac R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991)) (internal quotation marks omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.

3

Erickson v. Pardus, 551 U.S. 89, 94 (2007). The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (omission in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Twombly, 550 U.S. at 555 (requiring a complaint to contain facts sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face").

**C. Effect of Extrinsic Documents**

Virginia Tech attached three exhibits to its motion to dismiss, which it asks the court to consider in ruling on the motion to dismiss. D's Mem. in Supp. of Mot. to Dismiss at 5, Dkt. No. 21. These exhibits include the transcript from the hearing before the honor council (Ex. A.), Byerly's official transcript (Ex. B.), and the official notice of the hearing (Ex. C). At oral argument, Byerly objected to the court considering the exhibits, and objected to the authenticity of the hearing transcript.

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); see Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998); Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently

4

referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." Witthohn v. Fed. Ins. Co., 164 Fed. App'x 395, 396–97 (4th Cir. 2006) (citing Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999). "[I]n the event of conflict between the bare allegations of the complaint and any attached exhibit . . . , the exhibit prevails." Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Also, "[w]hen matters outside the pleadings are presented in a response to a 12(b)(6) motion, a district court has discretion to exclude the additional material." Lawson v. Miles, No. 1:11cv949, 2012 WL 3242349, at *4 (E.D. Va. Aug. 6, 2012) (citations omitted).

I will not consider the exhibits in ruling on the motion to dismiss as I find that these documents are not official public records, and are neither integral to nor sufficiently referred to in the amended complaint. See M.B. by & through Brown v. McGee, No. 3:16CV334, 2017 WL 1364214, at *1–2 (E.D. Va. Mar. 24, 2017) (court "exercise[d] its discretion" and declined to consider certain exhibits because the plaintiff did not refer to them in his complaint and they were not central to his claim).

### III. ANALYSIS

**A. Motion to Dismiss Pursuant to Rule 12(b)(1)**

Virginia Tech argues that, as a state agency, it is not a "person" amenable to being sued under § 1983. Further, as an "agency of the Commonwealth, Virginia Tech enjoys Eleventh Amendment immunity from suit in federal court." D's Mem. in Supp. at 6, Dkt. No. 21. Byerly argues in his brief that Virginia Tech waived its immunity when it filed

the motion to dismiss pursuant to Rule 10(a), by making a voluntary appearance in federal court. However, at oral argument, Byerly conceded that Virginia Tech retains Eleventh Amendment immunity and that the proper defendant is the individual officer of Virginia Tech, who while acting under the color of state law allegedly violated Byerly's constitutional rights.[3]

The Eleventh Amendment provides that:

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. The Eleventh Amendment blocks the exercise of federal jurisdiction over such claims, and extends to suits against state agencies, including Virginia Tech. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479 (4th Cir. 2005) (quoting Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)); Carboni v. Meldrum, 949 F. Supp. 427, 432 (W.D. Va.), aff'd, 103 F.3d 116 (4th Cir. 1996) (Virginia Tech is an arm of the state). Accordingly, I find that Byerly's claims against Virginia Tech are barred by the Eleventh Amendment.

A suit against a state official sued in his or her official capacity is allowed if the plaintiff seeks injunctive, prospective relief to prevent a violation of federal law. Chinn v. City Univ. of New York Sch. of Law at Queens Coll., 963 F. Supp. 218, 224 (E.D.N.Y. 1997). Here, Byerly seeks only injunctive relief to change the grade awarded in the epidemiology class, not monetary damages. Thus, I consider Byerly's request to amend

---

[3] Indeed, while a State's appearance in federal court through removal of a state action has been held to waive Eleventh Amendment immunity, this has not been expanded to include filing a motion to dismiss pursuant to Rule 10(a). See Lapides v. Bd. Of Regents of Univ. Sys. Of Georgia, 535 U.S. 613, 619, 624 (2002) ("holding that the "the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity"); Stewart v. North Carolina, 393 F.3d 484, 487-91 (4th Cir. 2004).

6

his amended complaint to name a proper defendant, i.e. an individual officer of Virginia Tech, constrained by the rule that leave to amend should be granted unless it would be futile. Fed.R.Civ.P. 15(a)(2); Steinburg v. Chesterfield Cnty. Planning Comm'n, 527 F.3d 377, 390 (4th Cir. 2008) (Although the district court should freely give leave to amend a complaint, an amendment may be denied when it is "prejudicial to the opposing party, there has been bad faith on the part of the moving party, or it would have been futile") (quotation omitted). Here, I grant Virginia Tech's motion to dismiss for failure to state a claim but also give Byerly leave to amend the complaint to name a proper party.

**B. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Byerly alleges a procedural due process claim under the Fourteenth Amendment, which requires proof (i) that he possessed a protected liberty or property interest, (ii) that the state or its agents deprived him of this interest, and (iii) that this deprivation occurred without constitutionally sufficient process. Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013). Byerly alleges that he had both a property and liberty interest in his public education, specifically (i) a "constitutionally protected property interest in his continued education at Virginia Tech, and the credits he purchased for [the epidemiology course]", and (ii) a "constitutionally protected liberty interest in his good name, reputation, and integrity."[4] Am. Compl. ¶¶ 38–39. Virginia Tech argues that Byerly fails to allege a constitutionally protected liberty or property interest, and, even if such interest were established, Byerly was accorded sufficient due process.

The first question in any procedural due process analysis is whether the plaintiff has been deprived of a property or liberty interest that is protected by the Fourteenth

---

[4] In his brief, Byerly argues he had a property interest in "completing the [epidemiology] course, continuing his education at Virginia Tech, and eventually, enrolling in medical school." Pl.'s Mem. in Opp. at 8, Dkt. No. 29.

7

Amendment, because the requirements of procedural due process only apply when such protected interests are implicated. See Bd. of Regents v. Roth, 408 U.S. 564, 569–70 (1972). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id. at 577. To possess a property interest, a claimant "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id.

　　1. Property Interest

In Goss v. Lopez, 419 U.S. 565 (1975), the Supreme Court held that a student's enrollment in a public school constituted a property interest because an Ohio law guaranteed a free education to all residents between 5 and 21 years old. In short, the Ohio statute created the entitlement to continued enrollment in public school. In contrast, Byerly can point to no Virginia law or other source for his claim that he has a property interest in either continued education at Virginia Tech, or the credits he purchased for his epidemiology course. See Doe v. Rector & Visitors of George Mason Univ., 132 F. Supp. 3d 712, 720–21 (E.D. Va. 2015) (collecting cases on the "cacophony of lower court authority" but noting that "[n]either the Supreme Court nor the Fourth Circuit has held that such a property interest exists in connection with higher education, either categorically or specifically with regard to Virginia law.").[5]

---

[5] Some cases assume without deciding that a property interest exists in a state post-secondary educational institution, but then go on to find that the process at issue was constitutionally adequate. See e.g. Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 223 (1985) (assuming a "constitutionally protectable property right . . . in continued enrollment"); Butler v. Rector & Bd. of Visitors of Coll. of Wm. & Mary, 121 Fed. App'x. 515, 518 (4th Cir. 2005) (same); Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69, 73 (4th Cir.1983) (assuming a liberty or property interest in the Honor Code proceeding); Tigrett v. Rector & Visitors of the Univ. of Va., 137 F.Supp.2d 670, 675 (W.D.Va.2001) (assuming "some

8

In Doe v. Alger, the district court, in considering the due process claims of a James Madison University student suspended from the university after being found guilty of sexual misconduct, addressed whether Doe had a constitutionally protected property interest in his continued enrollment at the university. 175 F. Supp. 3d 646, 656–58 (W.D. Va. 2016). The court emphasized that a protected property interest is created from "'a legitimate claim of entitlement,'" which may "arise from state statutes, contracts, regulations, or policies." Id. at 656–57 (quoting Roth, 408 U.S. at 576–78). Applying this standard, the court found that even though Doe did not identify a statutory right to education at a public university, he could show that he had a legitimate claim of entitlement to continued enrollment through adopted policies and practices regarding dismissal of students, including the student rights policy. Id. at 657–58. The court held that the student's property interest claim survived a motion to dismiss, and wrote "while the court is 'not now hold[ing] that [Doe] has any legitimate claim of entitlement to [continued enrollment] it will give him the opportunity to prove the legitimacy of his claim to a property right "in light of the policies and practices of the institution." Id. at 658, quoting Perry v. Sindermann, 408 U.S. 593, 602–03 (1972).[6]

---

constitutionally protected interest in continued enrollment"); Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 84–85 (1978) (assuming a liberty or property interest in continuing a medical education).

Other cases reject completely any protected property interest in post-secondary education. See, e.g., Newby v. Bon Secours St. Francis Family Med. Residency Program, No. 14–cv–459, 2014 WL 5465094, at *6 (E.D.Va. Oct. 28, 2014) (holding that "continued placement in a graduate program does not constitute a recognizable property interest under the Fourteenth Amendment" and granting motion to dismiss on those grounds); Abbas v. Woleben, No. 13–cv–147, 2013 WL 5295672, at *7 (E.D.Va. Sept. 19, 2013) (holding that "based on clear case law from this Court, the plaintiff does not have a property interest in continuing his medical education" and granting motion to dismiss); McCoy v. E. Va. Med. Sch., No. 11–cv–494, 2012 WL 662529, at *2 (E.D.Va. Feb. 28, 2012) (holding "a student does not have a protected interest in continuing education"); ("Nigro v. Va. Commonwealth Univ. Med Coll of Va., No. 5:09–CV–64, 2010 U.S. Dist. LEXIS 56229, at *16–18, 2010 WL 2262539 (W.D.Va. June 4, 2010).

[6] The court later definitively held, in deciding cross-motions for summary judgment, that Doe had a protected property interest in continued enrollment at JMU, based on a mutual understanding that "as

Unlike the plaintiff in Alger, Byerly has alleged no source rooted in Virginia law or a policy of Virginia Tech for his claim of entitlement to either continued enrollment or credits for the epidemiology course.[7] Further, unlike the student in Alger, Byerly was neither expelled nor suspended from school, but instead received an unsatisfactory grade in the course. See M.B. by & through Brown v. McGee, No. 3:16CV334, 2017 WL 1364214, at *12 (E.D. Va. Mar. 24, 2017) (referring to Alger and Rector and Visitors of George Mason University, supra, as adding a "novel voice . . . regarding what might establish a constitutionally protected interest for due process purposes" and distinguishing the two cases, in part, by the fact that M.B. "received no suspension at all"); see also Chandler v. Forsyth Tech. Cmty. Coll., 294 F. Supp. 3d 445, 456 (M.D.N.C.), aff'd, 739 F. App'x 203 (4th Cir. 2018) ("Because Plaintiff has not alleged that she was expelled from [the community college], she has not claimed that she was deprived of a protected interest in liberty or property as is necessary to state a due process claim.") (citing Tigrett, 290 F.3d at 628). As such, Byerly does not identify the basis for a property right involving the issuance of a grade.

Accordingly, I grant Virginia Tech's motion to dismiss Byerly's claim for a constitutionally protected property interest. See, e.g., Nofsinger v. Va. Commonwealth Univ., No. 12–cv–236, 2012 WL 2878608, at *6 (E.D. Va. July 13, 2012) (granting defendant's motion to dismiss and finding that plaintiff's pleadings fail to identify a protected property interest); Davis v. George Mason Univ., 395 F.Supp.2d 331, 336 (E.D. Va. 2005) (granting defendant's motion to dismiss because "under Virginia law, there is

---

long as Doe maintained sufficient academic progress, paid tuition and applicable fees, and did not commit a conduct violation, he had an 'entitlement' to continued enrollment at JMU." Doe v. Alger, 228 F. Supp. 3d 713, 729 (W.D. Va. 2016).

[7] Further, Byerly has presented no precedent supporting a claim of entitlement to course credits.

10

no property interest in continued enrollment at a public university"). However, I will allow Byerly leave to amend to allege a source for his claim of a property right.

   2. Liberty Interest

Alternatively, if Byerly can show that his F* grade and loss of credit for the epidemiology course impacted a liberty interest, then this offers another route to a claim under the Fourteenth Amendment. Byerly alleges that he has a "constitutionally protected liberty interest in his good name, reputation and integrity." Am. Compl. ¶ 39. To survive a motion to dismiss, Byerly must allege more than just damage to his reputation because Virginia Tech found him guilty of cheating without adequate due process. See Alger, 175 F. Supp. at 658 (W.D. Va. 2016); Rector & Visitors of George Mason Univ., 132 F. Supp. at 722–23 ("injury to reputation alone does not deprive an individual of a constitutionally protected liberty interest."); Paul v. Davis, 424 U.S. 693, 702 (1976) (noting that "the weight of our decisions establishes no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the [] Fourteenth Amendment").

To state a procedural due process liberty interest claim, a plaintiff must assert that a state actor has injured his reputation, i.e. imposed a reputational "stigma" on him, and must also have been deprived of "some more tangible interests." Paul v. Davis, 424 U.S. 693, 701 (1976). This has become known as the "stigma-plus" test: A plaintiff asserting a reputational liberty interest protected by the Fourteenth Amendment must show both (i) the infliction by state officials of a "stigma" to plaintiff's reputation *and* (ii) the deprivation of a legal right or status. See Id. at 710–11; Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 315 (4th Cir. 2012) (noting that the "stigma plus" test is met if the

11

plaintiff's "reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status").

In Rector & Visitors of George Mason Univ., the district court denied the defendant's motion to dismiss for failure to state a qualifying liberty interest, and held that to state a claim for a deprivation of a liberty interest, the student plaintiff must allege: "(i) a stigmatizing statement (ii) made public by the public university, (iii) in conjunction with his expulsion from the university, and (iv) that the charge was false." 132 F. Supp. 3d at 723 (citation omitted). Of course, Byerly cannot meet this test, as he was not expelled. The decision in Doe v. Rector & Visitors of George Mason Univ. has been criticized recently by Doe v. Alger, where the court granted the defendant's motion to dismiss the liberty interest claim, writing that there is no current precedent to support "borrow[ing] from public employment cases to find a liberty interest in cases of suspension or expulsion from public colleges and universities." 175 F. Supp. 3d 646, 660 (W.D. Va. 2016). Doe v. Alger points to Paul v. Davis, 424 U.S. 693 (1976) as "narrowing the circumstances in which the government's damage to a person's name gives rise to a protected liberty interest." 175 F. Supp. 3d at 659. Indeed, in Paul, the Supreme Court rejects any argument that the Fourteenth Amendment extends a right to "be free of injury wherever the State may be characterized as the tortfeasor" and emphasizes that the "procedural guarantees of the Due Process Clause cannot be the source for [a body of general federal tort law]." Paul, 424 U.S. at 701 (citing Griffin v. Breckenridge, 403 U.S. 88, 101-102 (1971)).

Here, Byerly alleges a clear injury to his reputation; however, he does not allege that any statutorily granted legal status has been altered or extinguished, as required

12

under the stigma plus, test. See, Paul, 424 U.S. at 701; see also Shirvinski, 673 at 316 (noting that the plaintiff's "procedural due process claim is nothing more than an ordinary defamation action dressed in constitutional garb"). Accordingly, I grant the defendant's motion to dismiss Byerly's claim for a constitutionally protected liberty interest. I will grant Byerly leave to amend to allege deprivation of a legal right or status, in addition to injury to his reputation.[8]

3. Due Process

A public university conducting a disciplinary proceeding must provide the accused with notice of the violation and an opportunity to be heard.[9] Goss v. Lopez, 419 U.S. 565, 579 (1975); Carboni v. Meldrum, 949 F. Supp. 427, 437 (W.D. Va.), aff'd, 103 F.3d 116 (4th Cir. 1996) ("Federal guarantees of due process only require that a student faced with disciplinary charges at a university be given notice of the charges against her, and a reasonable opportunity to present her side of the story to a neutral decisionmaker."). In Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69, 74 (4th Cir. 1983) the Fourth Circuit embraced the decision in Dixon v. Ala. State Bd. of Educ., 294 F.2d 150, 158 (5th Cir. 1961), summarizing the minimum due process requirements for disciplinary hearings in academic settings. When charged with misconduct, a student threatened with expulsion is entitled to notice that "contain[s] a statement of the specific charges and grounds which, if proven, would justify expulsion" and:

---

[8] I do not hold that Byerly may have a constitutionally protected liberty interest associated with receiving a failing grade in a class because of alleged cheating activity. However, because the defects in the amended complaint may potentially be cured, I will grant leave to amend rather than just dismiss the amended complaint with prejudice. See Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F. 3d 619, 623 (4th Cir. 2015).

[9] Courts have held that "disciplinary proceedings require more stringent procedural protection than academic evaluations, even though the effects of an adverse decision on the student may be the same." Henson v. Honor Comm. of U. Va., 719 F.2d 69, 74 (4th Cir. 1983).

13

> a hearing which gives the . . . administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required . . . Nevertheless, the rudiments of an adversary proceeding may be preserved without encroaching upon the interests of the college. [Here] the student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness testifies. He should also be given the opportunity to present to . . . an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf. If the hearing is not before the [administrator] directly, the results and findings of the hearing should be presented in a report open to the student's inspection.

Dixon, 294 F. 2d at 159.

The exact manifestation of these procedural protections remain "flexible," and may vary as the "particular situation demands." Butler v. Rector & Bd. of Visitors of Coll. of William & Mary, 121 F.App'x. 515, 519–20 (4th Cir. 2005) (quoting Mallette v. Arlington Cty. Employees' Supp. Retirement Sys. II, 91 F.3d 630, 630 (4th Cir. 1996)). "[T]rial-like" procedures are *not* required to pass constitutional muster. Butler, 121 Fed. App'x at 519 n. 2. In assessing the sufficiency of the challenged procedural protections, the Court considers three factors: (1) the nature of the interest protected; (2) the danger of error and the benefit of additional or other procedures; and (3) the burden on the government such procedures would present. Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Butler, 121 Fed. App'x at 520.

Here, Byerly alleges a single procedural due process violation in connection with the honor council's decision and his F\* grade. Byerly alleges:

> Virginia Tech failed to provide adequate due process when it neglected to identify [Byerly's] accuser or provide him with an opportunity to confront and question his accuser.

Am. Compl ¶ 42. He writes, "Had [Byerly] been given a meaningful chance to learn the identity of his accuser, and be provided a basis to assess their credibility before the disciplinary panel, he would have been afforded due process." Pl.'s Mem. in Opp. at 13, Dkt. No. 29. In support, Byerly emphasizes the importance of the credibility of the accuser, and notes that the student-accuser could have been "mistaken, or misidentified [him]" or "held bias as a former dating partner, or as a rival student for a top grade on the curve . . ." Id.

Byerly does not allege that the council was not a neutral decision-maker, or claim that he did not have an opportunity to be heard at the hearing. In fact, both he and Dr. Ray spoke before the council. Am. Comp. ¶ ¶ 25–27. Instead, Byerly claims that sufficient notice includes knowing the identity of his student accuser, and that he should have had the opportunity to cross-examine that individual.

Virginia Tech counters that Byerly received adequate due process, including "advance notice of the hearing which included the charge against him, the name of the accuser, and the witnesses expected to appear . . . ." D's Mem. in Supp. at 9, Dkt. No. 21. Virginia Tech takes the position that Byerly's accuser was Dr. Ray, and not the anonymous student, and emphasizes that Byerly had the opportunity to question Dr. Ray at the hearing. Id. at 9–10. Virginia Tech relies on Jaksa v. Regents of Univ. of Michigan, 597 F. Supp. 1245, 1252 (E.D. Mich. 1984), aff'd, 787 F.2d 590 (6th Cir. 1986), where the court held that the class professor, and not an anonymous student, was the "real accuser" and that "the fact that [the professor] undertook his investigation based on an anonymous phone call does not alter his status as plaintiff's accuser." In Jaksa, the professor received an anonymous telephone call from a student who stated he "saw

15

plaintiff switch exam cover sheets, and submit his cover sheet with a classmate's exam." Id. at 1247. The professor inspected the exams, saw that plaintiff's cover sheet was, indeed, attached to another student's exam, and thereafter filed charges of cheating with the Academic Judiciary which held a hearing and found plaintiff guilty. Thereafter, the plaintiff confessed in a letter and asked for leniency. Id.

Byerly alleges that, "Dr. Ray never stated that she witnessed cheating herself; rather, she said that another student reported cheating, and she felt it was her responsibility to relay the accusation to the university for an investigation." Am. Compl. ¶ 22. Byerly also alleges that, after Dr. Ray took his exam, she stated, "I have no assumption of guilt or innocence," and instead had to take his exam because of the anonymous student's accusation. Id. at ¶ 16. Thus, Byerly's case, as alleged, is distinguishable from Jaksa, where the professor undertook his own investigation. Here, Dr. Ray claimed no independent awareness of Byerly's alleged misconduct, and had no evidence of Byerly's cheating, but instead relied completely on a student "behind him" whose name she may not have even known. Id. ¶¶ at 16, 20. Taking these alleged facts in the light most favorable to Byerly, it is more difficult to view Dr. Ray as his "real accuser."

I recognize that Byerly is not entitled to "trial-like" rights of confrontation or cross-examination at disciplinary proceedings. See Henson, 719 F.2d at 73–75; Butler, 121 Fed. App'x at 520 ("[counsel] suggested that a trial-like proceeding, with the attendant right to call and cross-examine witnesses, should have been afforded. However, we find no basis in the law, nor does [plaintiff] provide one, for importing such a requirement into the academic context."). However, it is worth pointing out that the court

16

in Dixon specifically concluded that the "student should be given the names of the witnesses against him" noting that a charge of misconduct, "by its nature" is "easily colored by the point of view of the witnesses." 294 F.2d at 158–59; see also Doe v. Baum, No. 17-2213, 2018 WL 4265634, at *1 (6th Cir. Sept. 7, 2018) (holding that "if a public university has to choose between competing narratives to resolve a case, the university must give the accused student or his agent an opportunity to cross-examine the accuser and adverse witnesses in the presence of a neutral fact-finder").

In any event, because I have not found that Byerly sufficiently alleges either a property or liberty interest, and instead have granted the defendant's motion to dismiss with leave to amend, I need not decide whether Byerly has stated a procedural due process violation, at this time. However, due to my concerns about the constitutionality of the process at issue, at least at the motion to dismiss stage, I cannot simply join other courts who have assumed without deciding that either a liberty or property interest exists, but then gone on to find that the process at issue was constitutionally adequate. See Alger, 175 F. Supp. 3d at 656 (collecting cases). Indeed, in the event that Byerly can successfully allege a liberty or property interest, it may turn out that additional discovery is necessary to reveal the facts of this case. As Judge Ellis noted in Doe v. Rector & Visitors of George Mason Univ., "certain key facts about the process afforded to plaintiff are known only because of discovery in this action." 149 F. Supp. 3d at 622–23.

### IV. CONCLUSION

For the foregoing reasons, I grant the defendant's motion to dismiss and dismiss the plaintiff's claim without prejudice, but grant the plaintiff leave to file a second amended complaint to address the deficiencies in the amended complaint within fourteen

17

days.

                Entered: March 21, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge