# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| MATTHEW J. BYERLY | ) |
|     Plaintiff, | ) |
| v. | ) |
| | )    Civil Action No. 7:18-cv-16 |
| VIRGINIA POLYTECHNIC | ) |
| INSTITUTE AND STATE | ) |
| UNIVERSITY, ET. AL., | ) |
|     Defendants. | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff, Matthew J. Byerly ("Byerly"), filed a Second Amended Complaint (Dkt. 37) after I dismissed his Amended Complaint. Byerly asserts a single cause of action under 28 U.S.C. § 1983, claiming that academic discipline imposed by the defendants violated his due process rights under the Fourteenth Amendment to the Constitution. Defendants Virginia Polytechnic Institute and State University ("Virginia Tech")[2], Timothy Sands ("Sands"), and James Orr, Sr. ("Orr"), move to dismiss Byerly's Second Amended Complaint. Dkt. 42. Byerly again fails to state a claim upon which relief can be granted, and thus, I grant the motion to dismiss. Byerly has had previous opportunity to amend, and since further amendment would be futile, I dismiss the Second Amended Complaint with prejudice. [3]

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

[2] Byerly confirmed at the hearing that he does not oppose the motion to dismiss for lack of subject matter jurisdiction filed by Virginia Tech, conceding that Virginia Tech is not a proper defendant. Accordingly, Virginia Tech's motion to dismiss (Dkt. 38) is granted for the same reasons set forth in my previous memorandum opinion entered March 21, 2019.

[3] Indeed, Byerly stated at the hearing that he has no new facts to allege, even were leave to amend granted.

# I. BACKGROUND

Byerly originally filed this action as John Doe, proceeding against Virginia Tech only. I denied Byerly's motion to proceed under a pseudonym and directed him to file an amended complaint disclosing his actual name. Dkt. 17. Thereafter, Byerly filed the Amended Complaint, which Virginia Tech moved to dismiss. I granted the motion, but allowed Byerly leave to amend to address the factual and legal deficiencies in his Amended Complaint. Dkt. 36.

Byerly then filed the Second Amended Complaint, again naming Virginia Tech, but also adding as defendants Sands, the president of Virginia Tech, and Orr, the Assistant Provost for Academic Strategy and Policy, both employees of Virginia Tech. Second Am. Compl. ¶¶ 6–7, Dkt. 37. The Second Amended Complaint seeks the same relief as the Amended Complaint and asserts primarily the same factual allegations, with the only new substantive allegation being that, after he was adjudged guilty of cheating on the final exam in one of his classes, Virginia Tech required Byerly to enroll in an Academic Integrity Education Program costing $150. Byerly asserts that this punishment caused him to suffer a "deprivation of a property interest in [these] funds . . . ." Id. ¶¶ 38, 39, 46.[4]

As I must, I accept as true the factual allegations in the Second Amended Complaint. In the fall of 2016, Byerly was a student at Virginia Tech and enrolled in an epidemiology course taught by Dr. Pamela Ray, a part-time instructor. Id. ¶¶ 13–14. During the final examination in December 2016, Dr. Ray approached Byerly, collected

---

[4] Byerly confirmed at the hearing that the key facts added in the Second Amended Complaint involved the $150 cost to enroll in the Academic Integrity Education Program. However, the Second Amended Complaint also contains a few other additions, including changes occurring in paragraphs 1, 6, 7, 8, 27, 34, 35, 38, 39, 43, and 46. Comp. Dkt. 19 with 37. These other changes, however, do not materially alter the allegations Byerly asserts in this action.

his answer sheet and stated, "A student behind you said it appeared you were sharing answers, so I will have to take these. You will be contacted by honor court in the next few days." Id. ¶¶ 16–17.

Byerly appeared before an honor panel in February 2017 and at the hearing he denied sharing answers during the exam or cheating in any way. Id. ¶¶ 26, 28. Dr. Ray also spoke before the honor panel, explaining that she collected Byerly's exam upon receiving a complaint of cheating from another student. Id. ¶¶ 29–30. The student who allegedly witnessed Byerly cheating and notified Dr. Ray did not appear before the honor panel and was never identified. Id. ¶¶ 31, 34. The panel found against Byerly and his appeal to Dr. Orr was denied. Id. ¶¶ 32–33. Byerly received an "F*" in the course, which he asserts will be "devastating for his plans to enter the field of medicine." Id. ¶ 40. He also forfeited the credits he purchased for the course and was required to enroll in an Academic Integrity Education Program, which cost $150. Id. ¶¶ 36–39. Byerly filed the Second Amended Complaint in April 2019 and indicated at that time that he was a college senior at Virginia Tech, with plans to attend medical school. Byerly contends that disclosing this academic violation as required on the standardized medical school application could limit the number of schools that consider him for admission. Id. ¶¶ 11–12, 43.

Byerly asserts that he has a constitutionally protected property interest in his continued education at Virginia Tech, the credits he purchased for his epidemiology course, and the $150 he paid for the Academic Integrity Education Program. Id. ¶ 45–46. Byerly also asserts he has a constitutionally protected liberty interest in "his good name, reputation and integrity." Id. ¶ 47. Byerly alleges that the due process provisions of the

Fourteenth Amendment apply to Virginia Tech's disciplinary process, and that defendants "failed to provide adequate due process when they collectively neglected to identify [his] accuser or provide him with an opportunity to confront and question his accuser." Id. ¶¶ 48–50. Byerly asks for declaratory and injunctive relief, as well as attorney's fees and costs.

Defendants Sands and Orr move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted, asserting that Byerly has failed to allege a constitutionally protected liberty or property interest. Dkt. 43. Byerly opposes the motion to dismiss, arguing he "has a property interest in his education." In dismissing the Amended Complaint, I previously found that Byerly failed to allege a proper source for his claim of entitlement to credits for the epidemiology course, or a basis for a property right involving a grade. Nevertheless, I granted leave to amend to allege a source for his claim of a property right. However, in the Second Amended Complaint, the only material new fact Byerly asserts is that he was "subject to other financial penalties" including being required to enroll in an Academic Integrity Education Program costing $150. Consequently, Byerly argues he suffered a "deprivation of property interest in the funds he had to pay for the Academic Integrity Education Program . . ." Id. ¶¶ 38–39, 46. This new allegation does not create a legitimate source for a property interest protected by the Constitution.

## II. STANDARD OF REVIEW

**A. Federal Rule of Civil Procedure 12(b)(6)**

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the plaintiff's complaint. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir.

1999). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (omission in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Twombly, 550 U.S. at 555 (requiring a complaint to contain facts sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face").

### III. ANALYSIS

**A. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Byerly alleges a procedural due process claim under the Fourteenth Amendment, which requires proof (i) that he possessed a protected liberty or property interest, (ii) that the state or its agents deprived him of this interest, and (iii) that this deprivation occurred without constitutionally sufficient process. Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013). Byerly alleges that he had both a property and liberty interest in his public education, specifically (i) a "constitutionally protected property interest in his continued education at Virginia Tech, and the credits he purchased for [the epidemiology course]," (ii) a "property interest in the funds that he had to pay for the Academic Integrity Education Program," and (iii) a "constitutionally protected liberty interest in his good name, reputation, and integrity." Second Am. Compl. ¶¶ 45–47, Dkt. 37.

5

Defendants Sands and Orr argue that Byerly fails to allege any constitutionally protected liberty or property interest, and, even if such interest were established, Byerly was accorded sufficient due process.

The requirements of procedural due process only apply when the plaintiff has been deprived of a liberty or property interest that is protected by the Fourteenth Amendment. See Bd. of Regents v. Roth, 408 U.S. 564, 569–70, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."). As an initial matter, I note that Byerly does not set forth any new factual allegations to establish that he had a constitutionally protected liberty interest in his education at Virginia Tech. I previously found that Byerly did not allege sufficient facts to establish a violation of a protected liberty interest. See Mem. Op. at 11–13, Dkt. 35. Thus, I find that Byerly has failed to allege a liberty interest for the same reasons set forth in my previous opinion dismissing the Amended Complaint, including that he does not allege any statutorily granted legal status that has been altered or extinguished as required under the stigma plus test.

Further, Byerly's attempt to cure the deficiencies in the Amended Complaint by alleging that the $150 he paid for the Academic Integrity Education Program creates a property interest, also fails. In my previous opinion, I discussed what a claimant must show to establish a property interest and identified how Byerly failed to adequately allege the violation of a constitutionally protected property interest. I noted that "Byerly has alleged no source rooted in Virginia law or a policy of Virginia Tech for his claim of entitlement to either continued enrollment or credits for the epidemiology course." Id. at

10. The Second Amended Complaint alleges, "Byerly suffered a deprivation of a property interest in the funds that he had to pay for the Academic Integrity Education Program, which, but for the constitutionally flawed disciplinary process, he would not have incurred." Second Am. Compl. ¶ 46, Dkt. 37. Byerly argues that he "has a property interest in his education, including the fines and costs he paid as a result of the disciplinary process." Pl.'s Br. in Opp. at 1, Dkt. 46. However, Byerly has not alleged, as required, a source fixed in a Virginia Tech policy or procedure, or a Virginia statute that creates a constitutionally protected property interest either in the monies paid for the Academic Integrity Education Program or the credits for his epidemiology course.

Byerly cannot point to any precedent that paying a fee or tuition creates a protected property interest in the university setting under the circumstances set out in the Second Amended Complaint. Byerly relies on Richardson v. Town of Eastover, 922 F.2d 1152, 1157 (4th Cir. 1991), to support his position that the "imposition of a fine, cost or other pecuniary loss, may be sufficient to support a Section 1983 action." Pl.'s Br. in Opp. at 3, Dkt. 46. Byerly also offers a handful of cases from outside this circuit, stating that "courts outside Virginia have held that academic credits . . . may themselves be property under the Fourteenth Amendment." Id. at 3. However, none of these cases establish Byerly's protected property interest in either his course credits, or the cost of attending the Academic Integrity Program.

In Richardson, a nightclub owner alleged he was deprived of property without due process when the town did not renew the business licenses of two nightclubs. 922 F.2d at 1154. The court noted that a business owner may have a protected property interest in his business license because the ordinance governing the renewal of such licenses "provide[s

7

specific] reasons for which licenses may be withheld creat[ing] a reasonable inference that, in the absence of those reasons, the license will be renewed from year to year." Id. at 1158.[5] However, a business owner's protected property interest in a business license under the city's license renewal ordinance bears little relationship to Byerly, who claims a protected property interest in course credits not yet earned. A license issued by the state that can be suspended only upon a showing of cause is distinguishable from yet unearned course credits in a university. See Id. at 1156–57 (distinguishing between "[a] license issued by the state which can be suspended or revoked only upon a showing of cause" as creating a property interest protected by the Fourteenth Amendment and a "license [which] may be withdrawn at will" as providing no property interest to the holder) (comparing Barry v. Barchi, 443 U.S. 55, 64 (1979) with Bishop v. Wood, 426 U.S. 341, 345–47, 96 (1976)).[6]

In Merrow v. Goldburg, also cited by Byerly, the parties had agreed that the plaintiff had a property interest in his course credits, and thus the court made "no conclusion of law as to whether plaintiff has a protected property interest in his credits" instead simply assuming such an interest exists. 672 F. Supp. 766, 771 (D. Vt. 1987). The court noted, "[i]f a student performs financially, academically and behaviorally in accordance with the college's rules and regulations, he is entitled to the credits in the

---

[5] In Richardson, the court ultimately found that the plaintiff was afforded adequate due process, including adequate notice and an adequate opportunity to present his views to the town council. 922 F.2d at 1161.

[6] Other cases cited by Byerly stand on similar footing. In Waliga v. Board of Trustees of Kent State University, the court held that a degree-holder possesses a property right in his degree, such that the university board of trustees cannot revoke a previously granted academic degree without affording "constitutionally adequate procedures." 488 N.E.2d 850, 853 (Oh. 1986). However, a previously granted academic degree is different from course credits, yet unearned, by the student. Likewise, in Ikpeazu v. Univ. of Nebraska, which involved academic dismissal, though the court stated that "for present purposes we may tend to agree with plaintiff that he may assert a protected property interest in the grades he received from the instructor defendants" it did not definitively reach that issue because it found plaintiff was afforded sufficient process. 775 F.2d 250, 253 (8th Cir. 1985).

courses in which he is enrolled." Id. at 774. Significantly, the Merrow court found that the "[t]he terms of the contract are contained in the brochures, course offering bulletins, and other official statements, policies and publications of the institution." Id. Here, Byerly neither alleged nor provided any statutes, contracts or other official statements, policies, or publications setting forth any contract involving either the money paid for the Academic Integrity Education Program, or his course credits, though he was provided an opportunity to do so when previously granted leave to amend. See Shaw v. Elon Univ., No. 1:18CV557, 2019 WL 3231754, at *4 (M.D.N.C. July 18, 2019) (concluding that unless an enforceable contract explicitly including or incorporating policies or procedures outlined in a college handbook is alleged, a student cannot premise a breach of contract on those policies or procedures) citing Chandler v. Forsyth Tech. Cmty. Coll., 294 F. Supp. 3d 445, 456 (M.D.N.C.), aff'd, 739 F. App'x 203 (4th Cir. 2018). Further, Merrow is not binding authority in this circuit, and "[n]either the Supreme Court nor the Fourth Circuit has held that such a property interest exists in connection with higher education, either categorically or specifically with regard to Virginia law." See Doe v. Rector & Visitors of George Mason Univ., 132 F. Supp. 3d 712, 720–21 (E.D. Va. 2015).

## IV. **CONCLUSION**

For the foregoing reasons, I grant the defendants' motions to dismiss the Second Amended Complaint and dismiss the plaintiff's claim with prejudice.

Entered: December 5, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge